In re ESTATE OF Eugene
ZAMBRANO, Sr.,
Deceased

Appeal of Eugene D. Zambrano, Jr.,
and Eugene D. Zambrano, III.

Superior Court of Pennsylvania.

Argued Dec. 8, 2004.

Filed April 26, 2005.

Thomas M. Ferguson, Pittsburgh, for appellants.

Daniel P. Johnson, Pittsburgh, for appellee.

Before: HUDOCK, MUSMANNO and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Eugene D. Zambrano, Jr., and Eugene D. Zambrano, III, son and grandson, respectively, of the decedent and residuary beneficiaries of his estate, appeal from the March 25, 2004, Order denying all exceptions and cross-exceptions to, and making final, the December 16, 2003 Order adopting and affirming, with certain exceptions, the master's findings and conclusions relative to, *inter alia,* the apportionment of federal taxes.[1]

Eugene D. Zambrano [Sr.] died August 6, 1995. Virginia R. Zambrano, Administratrix, c.t.a., of the Estate of Eugene D. Zambrano, Sr., filed a Petition to Apportion and Pay Death taxes with the court on June 21, 2001. On February 27, 2002, to provide additional expertise on the issues presented, [the] Court appointed a special Master to mediate the parties' dispute, and, if no resolution was reached, to hear all issues brought forth, take testimony, consider the evidence, and provide [the] Court with findings of fact and conclusions of law. The Administratrix filed her First and Partial Account on March 4, 2002. During the course of the litigation, the Residuary Beneficiaries, Eugene D. Zambrano, Jr., and Eugene D. Zambrano, III, answered the apportionment petition, and filed objections to the accounting and to remove Virginia Zambrano as Administratrix, and concerning the apportionment of federal taxes. (See [the] court's orders of January 17, 2002 and February 27, 2002.) The Master's hearing took place on January 21st through the 24th of 2003, with a court reporter present to record the proceedings.

---

1. Appellants are the surviving issue of the decedent's first marriage, and are not blood relatives of the decedent's widow, appellee Virginia R. Zambrano, who is the administratrix of decedent's estate.

On June 25, 2003, the Master issued his Report (hereinafter "Master's Report" or "Report"), and on October 20 and 21 of 2003 this Court heard arguments on the Report of the Master and held a hearing to consider the award of attorney fees. (A transcript of the proceedings is part of the record.) An Order was entered adopting the Master's Report on December 16, 2003. The Order incorporated several changes modifying the Master's Conclusions of Law and rejected Conclusion 4 assessing a portion of the Estate's attorney fees and Master's fees against the Residuary Beneficiaries. It is to this Order that Residuary Beneficiaries filed exceptions and the Administratrix files cross exceptions. Upon review of the record and after giving due consideration to the briefs and reply briefs submitted, the court [denied] all exceptions and cross exceptions.

Trial Court Opinion, Mazur, J., 3/25/04, at 2–3.

¶ 2 As further background, we note the decedent died testate, leaving a joint will with his spouse, which was admitted to probate on October 18, 1995.[2] The will essentially was a mirror will, with wife inheriting most of the estate.

¶ 3 The master's conclusions included the following. The joint property inherited by wife qualified for the marital deduction and was not part of the residue. Since the joint marital property she received did not cause any death tax, wife was not a beneficiary subject to tax apportionment. The parties apparently do not dispute this finding. Two beneficiaries were left subject to apportionment, (1) son, who inherited non-probate items including a $128,174 life insurance policy and his father's 50% interest in The Zambrano Joint Venture, valued at $635,390 for federal tax purposes, which son and father held jointly, for a total of $763,564 in taxable transfers; and (2) the net residuary estate of $124,481. Master's report, 6/25/03, at 26. The master concluded grandson was not one of the taxable beneficiaries who must bear a portion of the federal estate tax. The federal estate tax, therefore, was calculated as follows:

| Beneficiaries | Taxable Transfers | Percentage of Total Taxable Transfers | Initial Apportionable Amount of Federal estate tax |
|---|---|---|---|
| Eugene D. Zambrano, Jr.— Joint Venture/Life Insurance | $763,564 | 85.98% | $209,957 |
| Residuary Estate | 124,481 | 14.02% | 34,236 |
| Virginia R. Zambrano— Joint Assets | 0 | 0 | 0 |
| Total | $888,045 | 100% | $244,193 |

¶ 4 The master further explained that in the apportionment of federal estate tax, credit for payment of Pennsylvania's inheritance tax inures to the benefit of the parties who paid the state death tax, in proportion to the amount of state taxes paid by each. Pennsylvania inheritance tax was apportioned solely to son and grandson. As indicated above, grandson was not a taxable beneficiary who must

2. Because the will did not name a personal representative, letters testamentary were granted to the decedent's widow as "administratrix" not executrix.

bear a portion of federal estate tax. Accordingly, son was the only beneficiary who was required to bear some of the federal tax *and* was "chargeable" with the payment of state death tax, i.e. receives a credit for state death taxes paid. The master therefore gave son credit for the $27,026 for state death taxes paid, reducing the federal estate tax apportioned to him to $182,931.

¶ 5 The master also considered the taxes attributable to a certain PNC Bank account. The administratrix had requested from PNC Bank a listing of the accounts in decedent's name. PNC responded with a letter which included the account at issue. Accordingly, the account was reported and taxed as part of the residue for both federal and Pennsylvania death tax purposes. The balance of the account as of the date of decedent's death was $49,044. The master apportioned the $13,489 in federal taxes attributable to this account,[3] being part of the tax apportioned to the residuary estate, to son and grandson, jointly and severally, as the owners of Zambrano Corporation but without any interest apportioned thereto. Instead, the interest on this tax was to be borne by the residuary estate. *Id.*, at 30–31.[4]

¶ 6 The master therefore calculated the following "final" apportionment of federal estate tax:

| | |
|---|---:|
| Eugene D. Zambrano, Jr. | $182,931 |
| Net Residuary Estate | 20,747 |
| Eugene D. Zambrano, Jr./Eugene D. Zambrano, III | 13,489 |
| | $217,167 |

**3.** The $49,044 balance in this account was 39.4% of the $124,481 residuary estate, and $13,489 is 39.4% of the $34,236 of federal tax apportioned to the residue.

**4.** The apportionment of the federal estate tax on this account is discussed in detail, *infra*, in addressing appellants' final issue raised on appeal.

¶ 7 We note that as appellants dispute only the apportionment of federal estate tax and apparently have no dispute as to Pennsylvania's inheritance tax, we will not discuss Pennsylvania's inheritance tax.[5] It is also important to note that after the administratrix initially filed Pennsylvania inheritance tax and federal estate tax returns, she filed supplemental returns in 1997. As a result, the taxable estate for federal purposes, and correspondingly the federal estate tax, was reduced. The federal estate tax was determined to be $217,166, the penalty was reduced to $16,737.03, and the accrued and unpaid interest as of May 13, 2002 was $118,554.93.

¶ 8 In 2002, the administratrix filed a second supplemental estate tax return. According to the master, this return claims additional deductions of $227,940 for interest that had been paid or accrued on the unpaid estate tax, inheritance tax and income tax obligations. If this supplemental return is accepted, the federal estate tax liability will be reduced from $217,166 to $134,443, with corresponding reductions in interest and perhaps in penalties as well. Master's report at 15.[6]

¶ 9 The master found that the federal estate tax, as determined by the 1998–1999 Internal Revenue Service (IRS) audit, had been paid in full pursuant to levies on estate assets in the amount of $268,118.43, and a direct payment by the estate of

**5.** In Pennsylvania, federal estate tax is apportioned according to the dictates of 20 Pa. C.S.A. § 3702, Equitable **apportionment of Federal estate tax**, whereas Pennsylvania inheritance taxes are apportioned according to 72 P.S. 9144, **Source of payment**.

**6.** The Internal Revenue Service (IRS) had not responded as of the filing of the master's report.

$37,500, for total payments of $305,618.43. *Id.*, at 17, 39. Penalties and interest, however, had not been paid in full and neither of the Zambranos had paid any federal estate tax.

 ¶ 10 In this appeal, appellants raise three issues which we will address *seriatim:*

1. Where an estate has paid only a fraction of the federal estate tax and the amount of the federal estate tax has not been finally determined by the Internal Revenue Service, may the Orphans' Court nonetheless apportion the federal estate tax to a party interested in property includible in the gross estate?

2. Where Pennsylvania law provides for a statutory methodology in apportioning federal estate tax to parties interested in property in the gross estate, may the Orphans' court utilize a statutory methodology contrary to the express statutory language?

3. May the Orphans' Court adopt a discretionary apportionment methodology of federal estate tax not authorized under the provisions of 20 Pa.C.S.A. § 3702?

Appellants' brief at 5.

Our standard of review from a final order of the Orphans' Court Division requires that we accord the findings of an Orphans' Court, sitting without a jury, the same weight and effect as the verdict of a jury. Thus, we will not disturb those findings absent manifest error. We shall modify an Orphans' Court order only if the findings upon which the order rests are not supported by competent or adequate evidence or if the court engaged in an error of law, and abuse of discretion, or a capricious disbelief of competent evidence.

*In re Estate of Ciaffoni,* 787 A.2d 971, 973 (Pa.Super.2001) (citations omitted).

¶ 11 Initially, appellants argue the court misinterpreted and misapplied the provisions of 20 Pa.C.S.A. § 3702, **Equitable apportionment of Federal estate tax**. They argue it is common practice for the estate to pay the federal estate taxes and then "seek contribution from parties interested in property includible in the gross estate." Appellants' brief at 15. Appellants also contend that since, as of the filing of appellate briefs with this Court, the IRS had not made a determination as to the second supplemental federal estate tax return, the tax has not been finally determined and therefore, any apportionment is premature.

 ¶ 12 The Internal Revenue Code mandates that the federal estate tax is to be paid by the executor,[7] and intends that generally, payment occurs prior to distribution of the estate's assets "so far as is practicable and unless otherwise directed by the will of the decedent." I.R.C. §§ 2002, 2205. Pennsylvania's Estate Tax Apportionment Act "operates to equalize the impact of the Federal estate tax by apportioning the tax burden among those persons with an interest in property includable in the estate." *Morell's Estate,* 455 Pa. 512, 517, 318 A.2d 727, 730 (1974); *see also,* 20 Pa.C.S.A. § 3702(a). Section 3702, Equitable apportionment of Federal estate tax, (a) provides as follows:

Subject to the provisions of section 3701 (relating to power of decedent), the Federal estate tax shall be apportioned equitably among all parties interested in

---

**7.** IRC § 2203, **Definition of executor**, provides in pertinent part, "The term 'executor' wherever it is used in this title in connection with the estate tax imposed by this chapter means the executor or administrator of the decedent...."

property includible in the gross estate for Federal estate tax purposes in proportion to the value of the interest in each party, subject to the rules stated in this section.

*Id.* The parties to whom the federal estate tax has been apportioned have a duty to pay it. 20 Pa.C.S.A. § 3706(a). The fiduciary charged with the duty to pay the tax "may recover from parties liable to apportionment the amounts of Federal estate tax apportionable to them respectively." *Id.,* § 3706(b).

¶ 13 Certainly, pursuant to the above statutory scheme, a valid scenario is that the administrator or executor pays the tax and then recovers the appropriate amounts from the parties ultimately liable. The official comments to Section 3706 support this view. *See* 20 Pa.C.S.A. § 3706, Official Comment –1951, to subsection (d) **Court decrees** (stating "[i]t is clear that a fiduciary who has paid the estate tax could petition the court and be authorized to receive contributions from those against whom the tax is apportioned.") A review of the above statutes however does not answer the question of whether the executor or administrator *must* pay the tax before he or she may recover from the parties who have a duty to pay it. There is a dearth of case law on the subject. We have looked, therefore, to other sources for guidance. The American Law Reports speak to these issues, stating:

The court must ordinarily await the final determination of the federal estate tax by the federal tax officials; otherwise it cannot know what amount must be apportioned, nor among what persons, nor in what proportions. And the court cannot apportion the tax before it has actually been paid in full where the apportionment statute provides that whenever it appears that the executor "has paid" an estate tax the amount of

the tax "so paid" shall be equitably apportioned; and pursuant to this view it is held that where the executor has paid a part of the tax but a balance is due, the court cannot apportion the tax or the part of it that has been paid, even though the probate estate is insolvent so that the executor cannot pay the balance of the tax. But under the more recent statutes, and by amendment to some of the older ones, providing for apportionment of the tax where the executor "has paid or may be required to pay" it, or where the executor or the estate "is liable for" the tax, the executor need not pay the tax before seeking an apportionment.

37 A.L.R.2d 199 (1954 updated April 1965) (footnote omitted). A more recent version of the American Law Reports, in a section titled "Time for seeking relief; necessity that tax be paid or finally determined," further provides:

While a few states have amended or enacted statutes to permit an application for the apportionment of a tax which the executor or fiduciary may be required to pay, the typical apportionment statute provides for apportionment when the tax has been paid by the fiduciary, and for apportionment of "the amount so paid." Under such statutes persons interested in the estate cannot be compelled to pay the estate tax until the executor or fiduciary has paid such tax in full. However, a distinction has been drawn between compelling payment or contribution and a tentative allocation of a share of the tax or a grant of relief to protect an inchoate right of recovery. An action for such purposes has been held to lie prior to payment under the typical state apportionment statutes. It also has been held that application of the apportionment statute may be determined prior to final determination of the estate

tax where such final determination could not be made until it had been determined whether the apportionment statute applied. Ordinarily, however, final settlement of the amount of the estate tax is a prerequisite to apportionment.

71 A.L.R.3d 371 (1976 updated March 2005) (footnote omitted).

■ ¶ 14 Pennsylvania's Estate Tax Apportionment Act does not employ the language of the "typical" statute by providing for apportionment where the executor "has paid" an estate tax, nor does it provide for apportionment of the tax "so paid." It is also unlike the "amended" or "newly enacted" statutes which state that apportionment is proper where the executor "has paid or may be required to pay the tax," or where the executor "is liable for" the tax. We find significant, however, that the section for "enforcement of contribution," states that the fiduciary "charged with the duty to pay" the tax "may *recover* from the parties liable." 20 Pa.C.S.A. § 3706(b) (emphasis supplied). This language appears to indicate that the legislature envisioned the executor or administrator would pay the tax in the first place, and then *recover* the amount paid from those ultimately liable. Significantly too, as mentioned above, the official comments to Sec-

tion 3706(d), explicitly state, "It is clear that a fiduciary *who has paid the estate tax* could petition the court and be authorized to receive contributions from those against whom the tax is apportioned." 20 Pa.C.S.A. § 3706, Official Comment (emphasis added); *see also* 1 Pa.C.S. § 1939, **Use of comments and reports** (providing that published comments may be consulted in the construction of statutes). This comment suggests that a fiduciary who has *not* paid the estate tax would *not* be authorized to receive contributions from those parties to whom the tax was apportioned.[8] In short, we find no evidence to convince us Pennsylvania's statute is anything other than a "typical" apportionment statute which requires that the fiduciary pay the tax in full before seeking apportionment and contribution.[9] We note though that a testator has discretion to alter the statutory scheme with respect to the federal estate tax, *see* I.R.C. 2205, and 20 Pa.C.S.A. §§ 3701, 3702, but the testator did not do so here.

■ ¶ 15 Here, the master found that although interest and penalties had not been paid in full, the federal estate tax had been paid in full pursuant to levies on estate assets in the amount of $268,118.43, and a direct payment by the estate of

---

8. We are guided by the principle of *expressio unius es exclusio alterius*, defined as: "A maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another." Black's Law Dictionary 581 (6th ed. 1991); *see also Lawless v. Jubelirer*, 571 Pa. 79, 83, 811 A.2d 974, 976, n. 6 (2002).

9. Our conclusion is further bolstered by the case of *Morell's Estate*, 455 Pa. 512, 318 A.2d 727 (1974). In *Morell*, our Supreme Court considered whether the appellant beneficiaries were properly charged interest on the federal estate tax apportioned to them which was paid by the estate. The Court found interest was improper because "liability for the payment of the tax is imposed directly on the estate by Section 2002 of the Federal

Estate and Gift Tax Code. ... Although the ultimate impact of the tax may be passed along to the beneficiaries, when the executor pays the Federal estate tax he is fulfilling *his* duty; there is no loan feature." *Id.*, at 517, 318 A.2d 727, 729–730. This was in contrast to the Court's findings with respect to Pennsylvania's inheritance tax, liability for the payment of which is imposed upon the transferee or legatee. "The estate is under no duty to pay the tax; thus when it does pay the tax the legatee benefits directly. Such payment resembles a loan and since the payment is working in his favor an interest charge on the legatee is both reasonable and equitable." *Id.*, at 516–517, 318 A.2d at 729.

$37,500, for total payments of $305,618.43. *See* Master's report, at 17, 39. As indicated *supra,* as the result of the first supplemental return, and the resulting 1997–1998 IRS audit, the federal estate tax was determined to be $217,166, the penalty was reduced to $16,737.03, and the accrued and unpaid interest *as of May 13, 2002* was $118,554.93, for a remaining liability of $406,457.96. There apparently remained an unpaid balance which the master attributed to interest and penalties. Given that generally, interest and penalties are apportioned in the same manner as the principal amount of the federal estate tax, 20 Pa. C.S.A. § 3702(h), and pursuant to the same section of the statute, it is illogical to suggest a scheme for their payment different from what we have found appropriate for the federal estate tax itself, i.e., that is they must be paid in full before contribution from those parties to whom the federal estate tax is apportioned is proper.[10]

¶ 16 Importantly, however, the second supplemental return remained pending as of the filing of the appellate briefs. Appellants contend apportionment and payment prior to resolution of this return is inappropriate. As to this return, the master noted:

> In August of 2002, the Administratrix filed a second supplemental estate tax return in 2002 (Exhibit 8). This return claims additional deductions of $227,940 for interest that had been paid or accrued on the unpaid estate tax, inheritance tax and income tax obligations. If the Supplemental return is accepted as filed, the Federal Estate Tax liability will be reduced from $217,166 to $134,443 with similar reductions in interest and perhaps penalty. To date, there

has been no response from the Internal Revenue Service on this second supplemental return.

Master's report, at 15, ¶ 55 (footnote omitted).

¶ 17 The following A.L.R. comments are pertinent:

> While the federal estate tax is paid upon the executor's computation when the estate tax return is filed and it may be many months or some years before the tax in a particular estate is finally settled, such settlement is ordinarily a prerequisite to apportionment. No matter how informal the practice may be, the court must ordinarily await the final determination of the federal estate tax by the federal officials; otherwise it cannot know what amount must be divided, nor among what persons, nor in what proportions.

71 A.L.R.3d 371 (1976 updated March 2005). Based upon the foregoing, we are compelled to agree with appellants on this issue.

¶ 18 The Orphans' Court, however, concluded "because the federal estate tax liability is clear, has been paid and may be further reduced, it will prejudice neither side and is consistent with equity to reach an apportionment decision at his point...." Trial Court Opinion, at 4. It ordered that an escrow account be established "as a precaution and to protect the interest of the Residuary Beneficiaries should their tax liability be reduced as a result of the filing of an amended return." *Id.* Presumably, the Orphans' Court, by its statement that "the federal estate tax liability is clear," meant that the adminis-

---

**10.** We note that the fiduciary charged with the duty to pay the federal estate tax has the right to suspend distribution of property to any party who has the ultimate duty to pay the estate tax, until the federal estate tax attributable to that property is paid, or, if the federal estate tax has not yet been determined and apportioned, until adequate security is furnished to the fiduciary. 20 Pa.C.S.A. § 3706(c).

tratrix in filing the second supplemental return is mainly seeking reductions in interest. However, the master's statement that "If the Supplemental return is accepted as filed, the federal estate tax liability will be reduced from $217,166 to $134,443 with similar reductions in interest and perhaps penalty," belies this conclusion. Master's report, at 15, ¶ 55; *see also* Master's report, at 26 n. 25 (stating that if the IRS allows some or all of the deductions in the pending supplemental return, "it will reduce the federal estate tax, as well as the amount of interest and penalty thereon"). This indicates to this Court that there may be a substantial decrease in federal estate tax liability. We are compelled to find that apportionment prior to a final determination of federal estate tax liability is unwarranted under Pennsylvania's apportionment scheme.

¶ 19 Although appellants' remaining questions are not pertinent until apportionment is warranted, i.e. when a final determination of the federal estate tax has been made by federal estate tax officials and the tax has been fully paid, for the sake of judicial economy, as these issues will surely arise when the tax is ultimately apportioned, we address these questions.

■ ¶ 20 Appellants next argue the court erred in accepting the master's apportionment methodology, which was based upon the gross estate rather than on the net taxable estate. They assert that in his apportionment, the master erroneously applied the now repealed Section 3704, rather than Section 3702 as amended in 1982. Appellants claim "[t]he plain and unambiguous language of § 3702 prohibits any deductions from the gross estate other than marital and charitable deductions for purposes of ascertaining the amount of federal estate taxes to be apportioned[.]" Appellant's brief at 15.

¶ 21 Specifically, appellants dispute the $228,404 deduction for debts and the $109,414 deduction for expenses, for a total of $337,818 in disputed deductions. *See* appellants' brief at 24–25; *see also* Master's report, at 8. The master deducted this $337,818 to arrive at the value of the taxable estate. He then used the taxable estate in his apportionment calculations. The taxable estate was obviously smaller in value than the gross estate. Accordingly, son's inheritance composed a larger percentage of the taxable estate than it would of the gross estate, and therefore he was apportioned a larger percentage of the tax.

¶ 22 In pertinent part section 3702 provides,

(a) **General rule.**—Subject to the provisions of section 3701 (relating to power of decedent), the Federal estate tax shall be apportioned equitably among all parties interested in property includible in the gross estate for Federal estate tax purposes in proportion to the value of the interest of each party, subject to the rules stated in this section.

. . .

(c) **Deductions.**—No Federal estate tax shall be apportioned against an interest allowable as a Federal estate tax marital or charitable deduction (determined and valued without regard to any Pennsylvania inheritance tax or other state or foreign death taxes apportioned against such interest) except as otherwise provided in subsections (b) and (g).

. . .

(i) **Values.**—The values used in determining the amount of Federal estate tax liability shall be used for Federal estate tax apportionment purposes. . . .

20 Pa.C.S.A. § 3702.

¶ 23 Former § 3704, **Method of apportionment**, repealed by the 1982 statutory amendments, provided as follows:

**(a) Basis of apportionment.**—Apportionment of the estate tax, except as provided in section 3703 of this code (relating to general rules), shall be made among the persons interested in property includible in gross estate in the proportion that the value of the interest of each such person bears to the value of the net estate before exemption. The values used in determining the amount of tax liability shall be used for this purpose.

**(b) Treatment of deductions and credits.**—The following principles shall apply with respect to deductions and credits allowable:

**(1) Deductions allowed by Federal revenue laws in determining the value of decedent's net estate.** Any interest for which deduction is allowable under federal revenue laws in determining the value of decedent's net estate, such as property passing to or in trust for a surviving spouse and charitable, public, or similar gifts or bequests to the extent of the allowed deduction, shall not be included in the computation provided in subsection (a) of this section, and to that extent no apportionment shall be made against such interest, except that when such an interest is subject to a prior present interest which is not allowable as a deduction, the estate tax apportionable against the present interest shall be paid from principal.

20 Pa.C.S.A. § 3704 (repealed by Act 1982, Feb. 18, P.L. 45, No. 26, § 4).

¶ 24 Appellants maintain the changes to § 3702 indicate apportionment must be based upon the gross estate minus only marital and charitable deductions, rather than all deductions which allegedly formed the basis of the "net estate" under former § 3704. Appellants' brief at 20.

¶ 25 In construing Section 3702, we are guided by the following canons: First, "[a] court interpreting a statute must ascertain and effectuate the intent of the legislature and give full effect to each provision of the statute if at all possible." *Hibbitts v. Hibbitts,* 749 A.2d 975, 977 (Pa.Super.2000); *see also* 1 Pa.C.S.A. §§ 1921, 1922; *Commonwealth v. Lopez,* 444 Pa.Super. 206, 663 A.2d 746, 748 (1995). Second, in construing a statute, "we must begin with a presumption that the legislature did not intend any statutory language to exist as mere surplusage. Accordingly, whenever possible, courts must construe a statute so as to give effect to every word contained therein." *Wiernik v. PHH U.S. Mortg. Corp.,* 736 A.2d 616, 620 (Pa.Super.1999), *appeal denied,* 561 Pa. 700, 751 A.2d 193 (2000). Third, the Court must presume that the General Assembly does not intend a result that is absurd, unreasonable, or unconstitutional. 1 Pa.C.S.A. § 1922(1), (3).

¶ 26 Section 3702(i) Values, specifically states "[t]he values used in determining the amount of federal estate tax liability shall be used for federal estate tax apportionment purposes." 20 Pa.C.S.A. § 3702(i). We presume this language is not superfluous and we must give it effect. *Wiernik, supra.* Accordingly, we must attach a meaning to it. Federal estate tax is imposed, i.e. calculated based upon, the *taxable estate.* I.R.C. § 2001. This is the "value used in determining the amount of Federal estate tax liability," i.e., federal tax liability is based upon the taxable estate and not the gross estate. Pursuant to § 3702(i) therefore, we find it is also the value that must be used for federal estate tax apportionment purposes.[11] Moreover,

---

**11.** In *Fischer Estate,* 28 Pa. D.&C.3d 639 (Com.Pl. Montgomery Cty.1980), the court noted that "[t]he [Pennsylvania Estate Tax Apportionment Act] directs that the values

we find it patently "unreasonable" to suggest the legislature intended that apportionment of the federal estate tax be based upon the gross estate when the tax itself is imposed upon the taxable estate.

¶ 27 We note that current § 3702(c), **Deductions**, explicitly provides that no tax is apportioned against an interest allowable as a federal estate tax marital or charitable deduction, "except as otherwise provided in subsections (b) and (g)." 20 Pa. C.S.A. § 3702(c). We find that inclusion of this provision does not preclude the other deductions allowed by I.R.C. §§ 2051 *et seq.*, such as debts and expenses. Rather, it appears the legislature found it necessary to specify the exceptional circumstances pursuant to 3702(b) and (g) under which federal tax might necessarily be apportioned to such an interest.

¶ 28 We also find the master's rationale as to this issue as adopted by the Orphans' Court to be persuasive and correct and therefore incorporate it herein, as set forth below:

> If you have an insolvent probate estate due to debts and administrative deductions, the Zambranos' theory would still apportion some of the death tax to that insolvent estate (not explaining where the residue would obtain the dollars to pay its share), even though the assets received by Eugene D. Zambrano, Jr. would have caused 100% of the death tax.

employed in apportioning the tax shall be those used in determining the tax liability of the estate." *Id.*, at 647–648. Before its repeal, Section 3704(a) contained a provision precisely like that in current Section 3702(i), stating "The values used in determining the amount of tax liability shall be used for this purpose." 20 Pa.C.S.A. § 3704 (repealed by Act 1982, Feb. 18, P.L. 45, No. 26, § 4). The *Fischer* Court concluded that Federal estate tax is "properly applied to the *net assets* after subtracting allowable deductions." *Fischer*, at 647–648 (emphasis supplied). We conclude

Master's report, at 47. "This would lead to an absurd result." *Id.*

¶ 29 For the foregoing reasons, we reject appellants' argument as to this issue.

■ ¶ 30 Lastly, appellants argue "there is no legal basis for the additional assessment of the federal estate tax on the PNC Bank account, because such account was a corporate asset and never an asset of the decedent." Appellant's brief at 15.

¶ 31 As indicated *supra*, the administratrix had requested from PNC Bank a listing of the accounts in decedent's name. PNC responded with a letter which included the account at issue. Accordingly, the account was reported and taxed as part of the residue for both federal and Pennsylvania death tax purposes. The balance of the account as of the date of decedent's death was $49,044. The account, however, bore the tax identification number for Zambrano Corporation. Appellee requested that the tax be apportioned to appellants as the owners of the Corporation, "on the theory that the Corporation presumably has had full access to and control over this bank account." Master's report at 30. The master apportioned the federal estate tax attributable to this account, i.e., $13,489, being part of the tax apportioned to the residuary estate, to son and grandson as the owners of Zambrano Corporation.[12] He found appellee reasonably relied on PNC's letter and further noted that

there is nothing in the amended statute that changes this scheme. Here, in arriving at the taxable estate, the master deducted debts and expenses. Debts and expenses are properly deducted from the gross estate in determining the taxable estate. I.R.C. §§ 2051, 2053.

12. The $49,044 balance in this account was 39.4% of the $124,481 residuary estate, and $13,489 is 39.4% of the $34,236 of federal tax apportioned to the residue.

appellants were directly involved with the death tax returns and IRS audits yet failed to catch this "purported" mistake. *Id.* While characterizing this decision as a "close call," he concluded "the tax follows the money," and apportioned the tax to son and grandson, jointly and severally, but without any interest apportioned thereto "due to the special circumstances." Instead, the interest on this tax was to be borne by the residuary estate. *Id.*, at 30–31.

¶ 32 We find no abuse of discretion or error of law. We find rather, as aptly stated by appellee, that the master, and therefore the Orphans' Court in adopting the master's rationale, "followed the general rule of estate tax apportionment under 20 Pa.C.S.A. § 3702(a), [i.e.], the individuals who received the benefit of the asset that caused the tax should pay the estate tax attributable to the asset." Appellee's brief at 24.

¶ 33 We reverse the court's Order providing for apportionment and contribution by appellants as we have found that a final determination of the federal estate tax must be made by the federal tax officials and the federal estate tax, including interest and penalties, must be paid in full before appellants can be required to do so. We agree with the master and the Orphans' Court that apportionment must be based on the net estate rather than the gross estate. Finally, we agree that tax on the PNC account is properly apportioned to appellants.

¶ 34 Order reversed.

¶ 35 Jurisdiction relinquished.